UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INGRID FINK,                                    Case No. 22-10107

     Plaintiff,                              Honorable Sean F. Cox
                                                United States District Court Judge

v.

GENESEE, COUNTY OF,

     Defendant.
_____/

## <u>ORDER GRANTING IN PART AND DENYING IN PART</u><br><u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

This is an age and gender discrimination case. Plaintiff, Ingrid Fink ("Fink") worked for Defendant, Genesee County (the "County") for 20 years. In 2021, the County launched a reorganization effort. As part of the effort, the County laid off Fink. As an additional part of the reorganization, the County created new positions that Fink was eligible to apply for. Fink applied for the new positions as well as another position and ultimately received none of them.

Fink claims she was discriminated against because of her age or gender when the County failed to hire her and when the County terminated her prematurely. Fink now brings suit under § 1983, for violation of her equal protection rights, and under an analogous Michigan state law, the Elliot-Larsen Civil Rights Act ("ELCRA").

This case is before the Court on the County's Motion for Summary Judgment. (ECF No. 19). The Court held a hearing on this Motion on April 6, 2023. For the reasons set forth below, the Court will **GRANT IN PART and DENY IN PART** the County's Motion.

## BACKGROUND

### A. Procedural Background

On January 18, 2022, Fink filed a Complaint against the County. (ECF No. 1). Fink's Complaint contains three Counts. Count 1 alleges that the County discriminated against Fink because of her age and gender in violation of her Fourteenth Amendment Equal Protection Rights. (ECF No. 1 at 6). Fink seeks monetary damages for the alleged deprivation of her rights under 42 U.S.C. § 1983. Count 2 alleges an analogous claim of age discrimination under the ELCRA. *Id*. at 9. Count 3 alleges an analogous claim of sex discrimination under the ELCRA. *Id*. at 11.

On December 28, 2022, the County filed the instant Motion for Summary Judgment. (ECF No. 18). With respect to summary judgment motions, this Court's practice guidelines are included in the Scheduling Order and provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The Counter-Statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(ECF No. 13 at 4).

Both parties complied with the Court's Scheduling Order. The County filed a Statement of Material Facts Not in Dispute (ECF No. 20), and Fink filed a corresponding Counter-Statement (ECF No. 21-1).

## B. Factual Background

Fink is a 50-year-old female. (ECF No. 20 ¶ 1); (ECF No. 21-1 ¶ 1). She was hired by Defendant, Genesee County, in 2002 as an accountant. *Id*. Fink worked in the County Controller's Office for three years before transferring to the County Circuit Court to become an accounting supervisor. (ECF No. 20 ¶ 2); (ECF No. 21-1 ¶ 2).

In 2016, Fink transferred to the County Health Department, where she worked as the Health Accounting Supervisor. (ECF No. 20 ¶ 3); (ECF No. 21-1 ¶ 3).

In her role at the Health Department, Fink hired two accountants to work under her— Russel Vansipe ("Vansipe") and Cary Smith ("Smith"). Vansipe is a male under the age of 40, and Smith is a 40-year-old male. (ECF No. 20 ¶ 4, 9); (ECF No. 21-1 ¶ 4, 9).

In April 2021, the Genesee County Chief Health Officer, Dr. Hackert, contacted Fink, Vansipe, and Smith. (ECF No. 20 ¶ 9); (ECF No. 21-1 ¶ 9). Dr. Hackert informed them that the County planned to consolidate the Finance Branch of the Health Department into the County's Fiscal Services Department. (ECF No. 20 ¶ 5); (ECF No. 21-1 ¶ 5).

As part of the reorganization, the County eliminated Fink, Vansipe, and Smith's positions. (ECF No. 20 ¶ 6); (ECF No. 21-1 ¶ 6). However, the County also created two new financial analyst positions within the Fiscal Services Department. (ECF No. 20 ¶ 7); (ECF No. 21-1 ¶ 7).

The financial analyst positions the County created were designated for Union 496 members. (ECF No. 20 ¶ 8); (ECF No. 21-1 ¶ 8). Union 496 consists of members who work in

non-supervisory roles, such as Vansipe and Smith. *Id*. Fink was not a member of Union 496. She was a member of Union 916, which consists of members who work in supervisory roles. *Id*. Nonetheless, Fink applied for the newly created financial analyst positions. (ECF No. 20 ¶ 11); (ECF No. 21-1 ¶ 11).

On May 4, 2021, Fink was laid off. (ECF No. 20 ¶ 12); (ECF No. 21-1 ¶ 12). Both Vansipe and Smith, however, remained employed. (ECF No. 20 ¶ 12, 13); (ECF No. 21-1 ¶ 12, 13).

Smith is no longer employed with the County. *Id*. He was laid off on August 12, 2021, when the County filled the first financial analyst position. (Simpson Dep. 12:1-18, ECF No. 19-4). Vansipe is still employed with the County as a financial analyst in the Sheriff's Department. (ECF No 20 ¶ 13).[1]

In May 2021, Kristie Primeau ("Primeau") and Chrystal Simpson ("Simpson") interviewed Fink for the newly created financial analyst positions. (ECF No. 20 ¶ 17); (ECF No. 21-1 ¶ 17). The County did not offer Fink one of the positions. *Id*.

Simpson testified that Fink was not given a financial analyst position because she was dishonest in answers to interview questions and because of past issues with Fink's work. (Simpson Dep. 20:4-21:23, ECF No. 21-6). Primeau further testified that she was concerned about Fink as a candidate because she answered interview questions dishonestly and because of past experiences working together. (Primeau Dep. 13:1-15, ECF No. 19-7). Fink's referral form stated that she was not hired because her responses to interview questions indicated she would not meet expectations of the position. (ECF No. 21-9).

---

[1] Fink claims that she applied for Vansipe's position in the Sheriff's Department separately from the analyst positions the County created in the reorganization, and that the County also discriminated against her when she was not offered that position. (ECF No. 21 at 9).

On August 12, 2021, the County interviewed Marilyn Zerka ("Zerka") for one of the new financial analyst positions. (Simpson Dep. 11:9-22). Zerka initially accepted the position, but then decided she would rather stay in her current position with the Genesee County Community Action Resource Department. *Id*.

On August 26, 2021, after Zerka recanted her acceptance, the County interviewed Ihsan Abufarhan ("Abufarhan") and ultimately offered him a position. *Id*. On November 29, 2021, the County offered the second of the new financial analyst positions to Ben Neschultz ("Neschultz"). *Id*.

Zerka is a 63-year-old woman; Abufarhan is a 41-year-old male; and Neschultz is a 40-year-old male. *Id*. Fink now brings suit claiming age and gender discrimination in violation of her Fourteenth Amendment Equal Protection Rights and Michigan's ELCRA.

## STANDARD OF DECISION

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

Further, "[i]t is an error for the district court to resolve credibility issues against the nonmovant . . .." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). "In effect, any direct

evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true . . ..” *Id.* (quoting *Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007)).

## ANALYSIS

Fink's Complaint contains three counts: 1) "Sex and Age Discrimination in Violation of 42 U.S.C. § 1983;" 2) "Age Discrimination in Violation of the Elliot Larsen Civil Rights Act;" and 3) Gender Discrimination in Violation of the Elliot-Larsen Civil Rights Act." (*See* ECF No. 1 at 6, 9, 11).

Within each Count, Fink alleges multiple instances where she experienced discrimination because of her age and gender. Fink claims she was discriminated against when she was laid off on May 4, 2021, while Vansipe and Smith were able to continue working until the newly created financial analyst positions were filled. (*See* ECF No. 21 at 5). Fink also claims she was discriminated against when she was not hired for the financial analyst position offered to Vansipe before the County started restructuring. (ECF No. 21 at 8). Lastly, Fink claims she was discriminated against when she was not hired for one of analyst positions created by the restructure. (*See* ECF No. 21 at 6).

The Court will analyze each claim (gender and age discrimination), and each sub-issue within each claim (failure to hire and premature termination) separately.

In sum, the Court holds: 1) a material dispute of fact exists with respect to Fink's claims that she was discriminated against, because of her gender (in violation of the ELCRA and Equal Protection Clause) or age (in violation of the ELCRA), when the County hired Russel Vansipe, and when Fink was allegedly prematurely terminated from her supervisor position; 2) the County is entitled to summary judgment on Fink's claims that she was discriminated against, because of

6

her gender (in violation of the ELCRA and Equal Protection Clause) or age (in violation of the ELCRA), when she was not hired for one of the financial analyst positions the County created during its restructuring; and 3) that the ADEA preempts Fink's § 1983 equal protection age discrimination claim.

### A. Fink's § 1983 Gender Discrimination Claim

First, Fink brings a claim, under 42 U.S.C. § 1983, for gender discrimination in violation of her Fourteenth Amendment Equal Protection Rights. (ECF No. 1 at 6).

Individuals have a right, protected by the Equal Protection clause of the Fourteenth Amendment, to be free from discrimination based on sex in public employment. *Davis v. Passman,* 442 U.S. 228, 234–35 (1979).

"The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *S.S. v. E. Ky. Univ.,* 532 F.3d 445, 457 (6th Cir. 2008) (quoting *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992)). Traditionally, the Equal Protection Clause reaches only state actors, but § 1983 equal protection claims may be brought against individuals as well as municipalities and certain other state entities. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 129 (2009).

"To prove a violation of the equal protection clause under § 1983, [a plaintiff] must prove the same elements as are required to establish a disparate treatment claim under Title VII, i.e., under the *McDonnell Douglas/Burdine* framework." *Lautermilch v. Findlay City Sch.*, 314 F.3d 271, 275 (6th Cir. 2003) (quoting *Jachyra v. City of Southfield,* No. 95–1009, 1996 WL 520795, at *3 (6th Cir. September 12, 1996)).

Under the *McDonnell Douglas* framework, a plaintiff must first make out a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). "Once a

complainant fulfills his initial obligation, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Once the employer articulates some legitimate, nondiscriminatory reason for the action, the complainant has an opportunity to show that the stated reason for rejection was in fact pretext." *Lautermilch*, 314 F.3d at 275 (citing *McDonnell Douglas Corp.,* 411 U.S. at 802-804).

Fink alleges two distinct instances of gender discrimination: 1) failure to hire her for a financial analyst position; and 2) premature termination from her supervisor position. The Court must use the *McDonnell Douglas* framework for each claim separately.

### 1.  Failure to Hire

Fink claims that but for her gender, she would have been offered one of the financial analyst positions the County created in its restructure or the financial analyst position in the Sheriff's Department that the County gave to Vansipe. (ECF No. 21 at 6). Fink has produced sufficient evidence of gender discrimination to create an issue of fact with respect to the County's decision to hire Vansipe over her, but not the County's decision to hire other applicants for the new analyst positions.

### i.  Prima Facie Case

To make a prima facie case of discrimination under the Fourteenth Amendment, the plaintiff must show: "(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 508 (6th Cir. 2021) (citing *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006)).

The County argues Fink has not established a prima facie case because she has not identified any "similarly situated non-protected employees [who] were treated more favorably." (ECF No. 19 at 11).[2] The County claims that, to be similarly situated, Fink must identify accountants in *supervisory positions* that were treated more favorably. *Id*.

The County bases its argument on *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992). In *Mitchell* the Sixth Circuit held that, to be similarly situated in the equal protection context, an employee must have been subject to the same standards, dealt with the same supervisor, and engaged in the same conduct. 964 F.2d at 583. The standard adopted in *Mitchell* supports the County's position. However, *Mitchell* does not control in this case.

In *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998), the Sixth Circuit confined the standard from *Mitchell* to discrimination claims involving disciplinary action. *Ercegovich,* 154 F.3d at 352. The Sixth Circuit explained:

> Courts should not assume, however, that the specific factors discussed in *Mitchell* are relevant factors in cases arising under different circumstances, but should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee. The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly-situated;" rather, as this court has held in *Pierce,* the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in "all of the *relevant* aspects." A prima facie standard that requires the plaintiff to demonstrate that he or she was similarly-situated in every aspect to an employee outside the protected class receiving more favorable treatment removes from the protective reach of the anti-discrimination laws employees occupying "unique" positions, save in those rare cases where the plaintiff produces direct evidence of discrimination.

---

[2] The County does not contest elements one through three of Fink's prima facie case. Therefore, the Court will assume that Fink is part of a protected class, suffered an adverse employment action, and was qualified for the financial analyst position.

*Id* at 352-53. Under *Ercegovich*, Fink need not show she worked under the same supervisor or that she had the same job responsibilities to be similarly situated.

Further, based on the facts in *Ercegovich*, Fink has offered sufficient evidence to create a dispute of fact whether she is similarly situated for both of her claims. In *Ercegovich,* an employer underwent a corporate reorganization that eliminated three workers' positions. *Id*. As part of the reorganization, the employer transferred the two youngest workers to new positions and laid off the older worker. *Id*.

The Sixth Circuit held the older employee was similarly situated to the younger employees even though the older employee had different job responsibilities. *Id*. The court found the three workers were similarly situated because all their jobs were related to human resources, were eliminated in a reorganization, and because they all sought transfer to a new department. *Id*.

Fink's situation is like the older worker in *Ercegovich*. She was laid off as part of a restructuring, she applied for a new financial analyst position (and a separate position in the Sheriff's Department), and she had unique job responsibilities—she was the only applicant from an accounting supervisor role. (Primeau Dep. 13:1-20, ECF No. 23-3). Fink has produced sufficient evidence to show she was similarly situated to Vansipe and to the applicants in a non-protected class applying for the new financial analyst positions.

ii.  **Non-Discriminatory Explanations**

Having found Fink produced sufficient evidence to make a prima facie case of discrimination in both instances, the burden now shifts to the County to offer a non-discriminatory explanation why Fink was not hired. *Lautermilch*, 314 F.3d 271, 275.

The County claims Fink's termination was legitimate for three reasons. First, because it was a part of a corporate restructuring. (ECF No. 19-3).

Second, because Fink lied when answering an interview question about past conflicts with a worker, and because Fink had been difficult to work with in the past. (ECF No. 19 at 8); (Simpson Dep. 20:4-21:21, ECF No. 19-4); (Primeau Dep. 13:1-15:1, ECF No. 23-3).

Third, the County argues that it could not be liable for gender discrimination because the first applicant who received an offer for a financial analyst position was Zerka. (ECF No. 19 at 9). Zerka is a 63-year-old female—meaning she is the same gender and older than Fink. (Simpson Dep. 11:2-12:3, ECF No. 23-1). Zerka ultimately turned down the position, but nonetheless, she was the County's first choice to fill one of the financial analyst positions. *Id*.

The County's proffered explanations are legitimate and non-discriminatory with respect to the new financial analyst positions. The County's arguments do not, however, directly address Fink's claim that she should have been hired for Vansipe's position. Nonetheless, the Court will assume *arguendo* the County met its burden on Fink's claim related to Vansipe.

### iii.  **Pretext**

Since the County articulated legitimate reasons not to hire Fink, the burden shifts back to Fink to show the County's proffered reasons were pretext for discrimination. *Lautermilch*, 314 F.3d 271, 275.

To make such a showing, a plaintiff must demonstrate that the defendant's proffered reasons: 1) had no basis in fact; 2) did not actually motivate the decisions; or 3) were insufficient to warrant the decisions. *Drews v. Berrien County*, 839 F. App'x 1010, 1012 (6th Cir. 2021).

The plaintiff must produce "sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the [defendant] intentionally discriminated against [her]." *Upshaw v. Ford Motor Co.,* 576 F.3d 576, 586 (6th Cir. 2009) (citing *Johnson v. Kroger Co.,* 319 F.3d 858, 866 (6th Cir. 2003) (alteration in original). At summary judgment,

this burden is not heavy. Summary judgment is warranted only if no reasonable juror could conclude that the employer's offered reasons were pretextual. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006); *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547–48 (6th Cir. 2004).

With respect to the financial analyst positions created from the restructuring, Fink offers two pieces of evidence to show pretext. First, Fink claims she was "the only person given unique and customized interview questions to align negatively with Plaintiff's experience." (ECF No. 21 at 7). Specifically, Fink argues that she was asked exclusively subjective questions, while all the other interviewees were asked accounting-based questions. *Id.*

The County does not dispute that Fink's interview was unique. However, Primeau testified that Fink was not asked accounting questions because she was a supervisor. (Primeau Dep. 11:17-12:9, ECF No. 23-3). Primeau also stated that Fink's interview was different from other applicants because she was the only supervisor applying for the position. (Primeau Dep. 13:1-20, ECF No. 23-3).

Simpson further testified that the County used similar questions in Fink's interview to those it used in other interviews but skipped the accounting questions because "as an accounting supervisor, obviously those things [basic accounting principles] would be known." (Simpson Dep. 17:1-9, ECF No. 23-2).

The County's explanation for the unique nature of Fink's interview is logical. Nonetheless, the Sixth Circuit "has repeatedly emphasized that decisions made on the basis of subjective criteria, such as whether an employee is a team player or whether she would fit into a new corporate culture, can 'provide a ready mechanism for discrimination,' and thus should be 'carefully scrutinized.'" *Brewer v. New Era, Inc.*, 564 F. App'x 834, 843 (6th Cir. 2014) (quoting

*Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.,* 690 F.2d 88, 93 (6th Cir. 1982)).

Therefore, Fink's unique interview weighs in favor of denying summary judgment.

Second, Fink argues that her two interviewers, Simpson and Primeau, provided inconsistent testimony about why Fink did not receive the job. According to Fink,

> Mrs. Primeau stated that her only issue with Plaintiff's interview was with the 'cross training' question. Mrs. Primeau stated that both her and Mrs. Simpson discussed only that question being at issue. However, Mrs. Simpson stated that her only issue that both her and Mrs. Primeau discussed was about 'conflict with a coworker.'

(ECF No. 21 at 9).

Fink has identified minor inconsistencies at best. Primeau and Simpson were consistent with each other in testifying that they each had problems with Fink's work history. Simpson testified that she and Primeau felt Fink was not right for the position because they had each experienced issues with Fink's work in the past. (Simpson Dep. 24:4-24, ECF No. 23-2).

Similarly, Primeau stated she did not feel Fink was right for the position because of her prior experience working with Fink in combination with the way Fink answered a question about cross training. (Primeau Dep. 13:1-18).

Further, the fact that Simpson and Primeau took issue with the way Fink answered different questions does not make their testimony inconsistent. Primeau testified that she notified Simpson of her personal concern with Fink's answer to a question about cross training. *Id*. Simpson separately had a concern with Fink's answer to a question about conflict resolution. (Simpson Dep. 20:4-21:21, ECF No. 19-4). The Court fails to see how Simpson's and Primeau's deposition testimony is inconsistent.

In sum, inconsistency in testimony can provide evidence of pretext. *See Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 523 (6th Cir. 1997). Here, however, Fink has not identified any material inconsistencies supporting that notion.

Lastly, Fink did not produce evidence of pretext to combat the County's strongest piece of evidence—that it offered a financial analyst position to Zerka. Fink's only claim is that Zerka "did not replace Plaintiff because Mrs. Zerka turned the job down for the reason that she wanted to stay in her current department." (ECF No. 21 at 5).

Fink appears to argue that the Court should not consider the County's offer to Zerka because she later decided not to accept. Fink has identified no caselaw supporting this argument, and the Court sees no reason why it should ignore the Zerka offer.

Ultimately, The Zerka offer is dispositive and warrants summary judgment in the County's favor. No reasonable jury could find that Fink was treated differently because of her gender when the County's first choice for a financial analyst position was a 63-year-old female.

Fink's failure to combat evidence of the Zerka job offer does not, however, foreclose her other claim. Zerka did not apply for the analyst position in the Sheriff's Department that the County awarded to Vansipe. (Fink Dep. 29:21-21). Since the Zerka offer is not a relevant consideration for Vansipe's position, Fink has a separate opportunity to create a material dispute of fact.

With respect to Vansipe's position, Fink claims there is evidence of pretext because she was a plainly superior applicant when compared to Vansipe. (ECF No. 21 at 8-9).

"The relative qualifications of candidates can establish triable issues of fact as to pretext where 'the evidence shows that either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former...'" *Rachells v.*

*Cingular Wireless Emp. Servs., LLC*, 732 F.3d 652, 668 (6th Cir. 2013) (quoting *Bartlett v. Gates,* 421 Fed.Appx. 485, 490 (6th Cir. 2010)).

Fink argues she was plainly superior to Vansipe because she had twenty years of accounting experience, compared to Vansipe's three, and because she was Vansipe's supervisor. (ECF No. 21 at 8-9).

The County contends that Fink's comparison to Vansipe is a red herring. The County argues that comparison to Vansipe is inappropriate because he was hired for a position in the Sheriff's Office, and not for one of the two financial analyst positions Fink applied for. (ECF No. 23 at 7).

Vansipe affirmed this account. He testified that the position he applied for was not one of the two financial analysist positions created by the reorganization of the Health Department, that he applied before the County reorganization began, and that the position came open because an employee retired. (Vansipe Dep. 26:2-28:19, ECF No. 19-5).

Nonetheless, Fink claims that she separately applied for the same job as Vansipe in March of 2021. (Fink Dep. 29:1-30:31:3, ECF No. 21-4). Fink testified that Vansipe's position was posted prior to her knowledge that the health department was restructuring, that she applied for the position separately from the Health Department reorganization positions, and that she applied for the position despite knowing it was essentially a demotion. *Id*. at 31:8-32:5.

It is curious that Fink claims she applied for a demotion before she was aware that the County was eliminating her position. Regardless, it is not the Court's duty to weigh credibility at summary judgment. *See Skousen*, 305 F.3d at 526 (6th Cir. 2002). Vansipe was hired over Fink despite having 17 years less experience and working as Fink's subordinate. That alone is sufficient to create a question of fact regarding pretext.

In conclusion, Fink has failed to produce sufficient evidence of pretext to survive summary judgment on her claim that she was discriminated against when she was not hired for one of the two financial analyst positions created by the County's restructure. Fink has, however, produced sufficient evidence of pretext to show she was discriminated against when the County hired Vansipe for the financial analyst position in the Sheriff's Department.

### 2. Early Termination

Fink also claims she was subject to gender discrimination because she was laid off prematurely. (ECF No. 21 at 5-6). A triable question of fact exists on this issue.

Fink claims that when Dr. Hackert told her about the reorganization, Hackert also told her that she, Vansipe, and Smith could work until the new financial analyst positions were filled. (Fink Dep. 26:1-13, ECF No. 21-4).

Despite this promise, Fink was laid off on May 4, while the two male accountants remained employed. (ECF No. 20 ¶ 12); (ECF No. 21-1 ¶ 12). Smith continued to work, as promised, until August 12, 2021, when the County offered the first financial analyst position to Zerka. (Simpson Dep. 12:1-18, ECF No. 19-4). Vansipe also remained employed with the County as a financial analyst in the Sheriff's Department. (ECF No 20 ¶ 13).

Fink's early termination claim was not addressed by the County until its Reply Brief. (*See* ECF No. 23 at 7). Even then, the only argument the County made is that Smith was able to remain on staff because he was the only person in Simpson's department. (ECF No. 23 at 7). One sentence in the County's Reply Brief is insufficient for the Court to hold that no reasonable jury could find Fink was discriminated against because of her gender when she was terminated before her male subordinates. There remains a triable question of fact.

**B. Fink's § 1983 Age Discrimination Claim**

Fink also claims she was discriminated against, because of her age, in violation of her equal protection rights. (ECF No. 21 at 5-10). Fink claims the identical facts discussed above also constitute age discrimination because Vansipe, Smith, Abufarha, and Neschultz are all significantly younger than her. *Id.*

It is unclear if a § 1983 equal protection age discrimination claim is viable. In an unpublished opinion, the Sixth Circuit addressed the ADEA's preclusion of § 1983 actions alleging violations of the ADEA itself. The Court held that the plaintiff could not bring her ADEA claim under § 1983 because the "detailed statutory remedy created by the ADEA constitutes the exclusive means for enforcement of the Act." *Janes v. Bardstown City Schools Bd. of Educ.*, 97 F.3d 1452, 1996 WL 536794, at *4 (6th Cir. 1996)).

The Sixth Circuit has yet to decide, however, whether the ADEA also preempts § 1983 claims alleging age discrimination in violation of one's equal protection rights. *See e.g., Crawford v. Columbus State Cmty. Coll.*, 196 F. Supp. 3d 766, 781 (S.D. Ohio 2016) (discussing whether the ADEA preempts § 1983 actions alleging age discrimination under the Equal Protection Clause). There is currently a circuit split on the issue.

In *Guilbeaux v. City of Detroit*, No. 5:19-CV-13728, 2020 WL 8836924, at *11 (E.D. Mich. Nov. 23, 2020), *report and recommendation adopted*, No. 19-13728, 2021 WL 508425 (E.D. Mich. Feb. 11, 2021), Magistrate Judge Patti aptly collected cases summarizing the circuit split:

> *See Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104, 107, 110 (3d Cir. 2014) (reasoning that § 1983 claims are unavailable where Congress has precluded such claims through other legislation, and stating "we join the majority of Courts of Appeals in concluding that Congress intended the ADEA to be the exclusive remedy for claims of age discrimination in employment") (citing *Tapia-Tapia v. Potter*, 322 F.3d 742 (1st Cir. 2003),

> *Migneault v. Peck*, 158 F.3d 1131 (10th Cir. 1998), *vacated on other
> grounds by Bd. of Regents of Univ. of N.M. v. Migneault*, 528 U.S. 1110,
> 120 S.Ct. 928, 145 L.Ed.2d 806 (2000), *Chennareddy v. Bowsher*, 935
> F.2d 315 (D.C. Cir. 1991) and *Zombro v. Baltimore City Police Dep't*, 868
> F.2d 1364 (4th Cir. 1989)); *see also LaFleur v. Tex. Dep't of Health*, 126
> F.3d 758, 760 (5th Cir. 1997) ("[B]ecause Congress has enacted a
> statutory provision to confront age discrimination in the work place via the
> ADEA, and based on this circuit's opinion that the ADEA is the sole
> remedy for persons who have been discriminated against based on their
> age, we are compelled to hold that where a plaintiff asserts a claim of age
> discrimination under § 1983 and where the facts alleged will not
> independently support a § 1983 claim, the plaintiff's age discrimination
> claim is preempted by the ADEA."); *but see Levin v. Madigan*, 692 F.3d
> 607, 617 (7th Cir. 2012) ("Although the ADEA enacts a comprehensive
> statutory scheme for enforcement of its own statutory rights, ... we find
> that it does not preclude a § 1983 claim for constitutional rights. While
> admittedly a close call, especially in light of the conflicting decisions from
> our sister circuits, we base our holding on the ADEA's lack of legislative
> history or statutory language precluding constitutional claims, and the
> divergent rights and protections afforded by the ADEA as compared to a §
> 1983 equal protection claim.").

In sum, the First, Third, Fourth, Fifth, Tenth, and D.C. Circuits have held the ADEA preempts all § 1983 age discrimination cases, regardless of whether they stem from a violation of the ADEA itself or the Equal Protection Clause. *Id*. The Seventh Circuit is the only circuit to have held the ADEA does not preempt § 1983 claims for age discrimination in violation of the Equal Protection Clause. *Id*.

Neither party addressed ADEA preemption of § 1983 age discrimination claims in their briefs. So, at hearing, this Court ordered supplemental briefing on the issue.

Having considered the parties' briefs (ECF Nos. 26 and 27), and the opinions of sister circuits, the Court deems it prudent to rule with the majority and find that Congress intended the ADEA to be the exclusive remedy for claims of age discrimination in employment. Since the ADEA preempts Fink's § 1983 age discrimination claim, that claim must be dismissed.

### C. Fink's Analogous ELCRA Claims

In addition to Fink's § 1983 age and gender discrimination claims, Fink brings analogous age and gender discrimination claims under the ELCRA. Mich. Comp. L. § 37.2202.

Fink's ELCRA gender discrimination claim yields the same result as her § 1983 gender discrimination claim. As will be more fully explained below, Fink's ELCRA age discrimination claim also yields the same outcome as Fink's § 1983 gender discrimination claim.

In sum, under the ELCRA, Fink has produced sufficient evidence to create a dispute of material fact with respect to her claim that she was discriminated against, because of her age or gender, when she was prematurely terminated and when Vansipe was hired instead of her. However, no reasonable jury could find the County discriminated against Fink, because of her age or gender, when it did not hire her for one of the analyst positions created during its restructure.

#### 1.  ELCRA Gender Discrimination

Fink's ELCRA gender discrimination claims are identical to her § 1983 Equal Protection Clause gender discrimination claims.

The ELCRA prohibits employers from discriminating against employees and applicants because of, among other things, age and gender. Mich. Com. L. § 37.2202. Courts analyze gender discrimination claims under the ELCRA using the same *McDonnell Douglas* burden-shifting framework required in Title VII and equal protection cases. *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 653 (6th Cir. 2012).

Fink also relies on the same facts and arguments for her ELCRA claim as her § 1983 claim. (*See* ECF No. 21 at 2-10). Therefore, the Court's analysis with respect to Fink's § 1983 gender discrimination claims, for failure to hire and early termination, is equally applicable here.

### 2.   ELCRA Age Discrimination

Fink's ELCRA age discrimination claims are also nearly identical to her gender discrimination claims and yield the same result.

Courts analyze age discrimination claims under the ELCRA using the same standards as federal ADEA claims. *Geiger v. Tower Auto.*, 579 F.3d 614, 626 (6th Cir. 2009).

Like equal protection and ELCRA gender discrimination claims, courts assess ADEA age discrimination claims using the *McDonnell Douglas* evidentiary framework. *Mitchell*, 964 F.2d at 582 (citing *Laugesen v. Anaconda Co.,* 510 F.2d 307 (6th Cir. 1975)).

Additionally, Fink's age discrimination claims are premised on the same facts and arguments as her gender discrimination claims. (*See* ECF No. 21 at 2-10). Fink alleges she was subject to adverse employment actions, because of her age, when she was she was not hired for a financial analyst position (in the Sheriff's Office or one of the new positions) and when she was terminated early from her supervisor position. *Id*.

### i.   Failure to Hire

Since Fink relies on the same facts and arguments as discussed in her gender discrimination claims, the *McDonnell Douglas* analysis for Fink's ELCRA age discrimination claim, for failure to hire, is the same as her gender discrimination claims, except in two aspects.

First, obviously, rather than focusing on gender, Fink takes issue with how the County treated her, as compared to Smith, Vansipe, Abufarha and Neschultz, because they are younger than her. (*See* ECF No. 21 at 10).

Second, the standard to make a prima facie case of ADEA age discrimination using the *McDonnell* framework is slightly different than the standard to make a prima facie case of

gender discrimination. Accordingly, the County makes a different argument about Fink's inability to make a prima facie case of age discrimination. (*See* ECF No. 19 at 7).

The parties' analysis on parts two and three of the *McDonnell* framework, however, is identical for Fink's age and gender discrimination claims. So, if/when Fink makes a prima facie case of age discrimination, her claim becomes identical to her gender discrimination claims.

With respect to Fink's claim that she was discriminated against when she did not receive a new analyst position, her ability to make a prima facie claim is immaterial. Her claim would still fail in parts two and three of the *McDonnell* framework because Fink cannot show pretext. Chiefly, because the County's first choice for an analyst position was a 63-year-old female.

With respect to Fink's other claim, the County does not attempt to argue that Fink is unable to make a prima facie case of age discrimination relating to Vansipe's position in the Sheriff's Office. (*See* ECF No. 19 at 7-12). Therefore, as in Fink's gender discrimination claims concerning Vansipe, Fink offered sufficient evidence, to make a prima facie case, and of pretext, to create a triable issue of fact.

## ii. **Early Termination**

Lastly, Fink's age discrimination for early termination mirrors her gender discrimination claim. Fink claims that she was terminated on May 4, 2021, despite a promise that she could work until the financial analyst positions were filled, while two younger males remained employed. (ECF No. 21 at 5-6). The analysis in Fink's early termination gender discrimination claim is equally applicable here. Whether Fink was prematurely terminated is a triable issue of fact.

**CONCLUSION**

In conclusion, the County's Motion is **GRANTED IN PART and DENIED IN PART**.

The Court holds that: 1) Fink has produced sufficient evidence of gender discrimination, under

the equal protection clause and the ELCRA, and of age discrimination under the ELCRA, to

create a dispute of fact on her claims that she should have been hired as an analyst in the

Sheriff's Department instead of Vansipe, and that she was prematurely laid off; 2) the County is

entitled to summary judgment on Fink's claims that she was discriminated against, because of

her gender (in violation of the ELCRA and Equal Protection Clause) or age (in violation of the

ELCRA), when she was not hired for a financial analyst position the County created as part of its

restructuring; and 3) that the ADEA preempts Fink's equal protection age discrimination claim.

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: May 19, 2023